# HAWLEY, DODD & CO. *v.* JETTE & CLARK.

BILLS OF EXCHANGE.—Where an instrument in writing was in the following words:

PORTLAND, OR., December 10, 1879.

$300.      On January 5, 1880, without grace, pay to the order of H. D. & Co., three hundred dollars, value received, and charge the same to the account of      J. & C.

To J. D. M., Oregon City.

  *Held,* That the above order was an inland bill of exchange, and not a check, and that as such, the duties, privileges and liabilities of the law merchant attach to it.

CHECKS AND BILLS—DIFFERENCE.—The particulars in which checks differ from ordinary bills of exchange are: *First,* They are always drawn on a *bank* or *banker,* and are payable on presentment, *without any days of grace. Second,* They require *no acceptance* as distinct from prompt payment. *Third,* They are always supposed to be drawn on a previous deposit of funds, etc.

PRESENTMENT AND NOTICE OF NON-PAYMENT.—The text writers and authorities now agree that the bankruptcy and insolvency of the drawer, however well known, constitute no excuse for neglect to make due presentment, or to give due notice of its dishonor to the drawer and indorsee, if not accepted. *And the same rule applies as to the necessity of presentment for payment to the acceptor of a bill or maker of a note, and as to notice of its dishonor by non-payment.* This doctrine rests upon an implied contract to make presentment and give due notice of the dishonor, and further, notwithstanding the failure or insolvency, it cannot be definitely ascertained without presentment for payment that the bill will be dishonored, as through friends, or reasons unknown to others, the principal party may devise means for payment. By receiving the bill, they undertook to do all that the law merchant-required to be done to obtain payment, and if they fail in the performance of that duty the debtor is discharged.

APPEAL from Marion County. The facts in the case are as follows:

On December 10, 1879, Jette & Clark were indebted to plaintiffs, Hawley, Dodd & Co., in the sum of $617 03. That on said day defendants, in Portland, Oregon, gave Hawley, Dodd & Co. an order in writing, signed by defendants, and directed to J. D. Miller, of Oregon City, Oregon, ordering said J. D. Miller to pay to plaintiffs, on the 5th day of January, 1880, the sum of three hundred dollars. That on said 10th day of December, 1879, Miller was indebted to said firm of Jette & Clark, in said sum of $300, and was solvent. That plaintiffs received said order, and on the 12th day of December, 1879, presented the same to Miller for acceptance, and that the same was by said Miller on that day accepted. That said order was never presented to Miller for payment. That on January 4, 1881, Miller became and ever since has been insolvent. That on March 23, 1880, defendants paid plaintiffs the balance of said old account, to-wit: the sum of $317 03. That up to the time this case was tried, plaintiffs were still in possession of said order.

*Thayer & Williams,* for appellants.

Maintain that if at the time the order became due, the defendants had no funds in the hands of Miller to pay it, or no *bona fide,* reasonable or just expectation that it would be paid, they were not entitled to demand and notice of dishonor. (2 Daniels on Negotiable Instruments, secs. 1078, 1079, 1081; 1 Parsons on Bills and Notes, 539–540; *Dickens* v. *Beal,* 10 Peters, 578; *Dollfus* v. *Frusch,* 1 Denio, 367.) There is no difference in this respect between a bill and a check. (Edwards on Bills and Notes, 397, 398, 646, 647.) Taking the order was no payment unless the order was paid. (Edwards on Bills and Notes, 191, 192; *Hays* v. *Stone,* 7 Hill, 128; *Lovitt* v. *Cornwell,* 6 Wend., 378.

*Bellinger & Gearin,* for respondents.

Contend that it is the duty of the holder of a bill of exchange to present the same to the drawee for acceptance, and to present it for payment according to the terms thereof, and to promptly notify the drawer in case of non-payment, and any failure in performing any of these duties, discharges the holder. (*Mauney* v. *Coit,* 80 N. C., 300.) The known insolvency of the acceptor of a bill is no excuse for non-presentment for payment. (Daniels on Negotiable Instruments, 193; Chitty on Bills, 396, 438; *May* v. *Coffin,* 21 Mass., 341; *Benedict* v. *Coffey,* 5 Duer, 226; *Hunt* v. *Wadleigh,* 26 Maine, 271; *Jackson* v. *Richards,* 2 Caine, 343.)

By the Court, LORD, C. J.:

The facts in this case were stipulated, and tried before the court. The issue upon which it was tried, was that "if the fact of Miller's insolvency, at the time said order was due and payable, excused non-presentment for payment by

plaintiffs, and notice of dishonor to defendants, it is admitted that the plaintiffs are entitled to recover. If Miller's said insolvency was no excuse for non-presentment for payment and notice to defendants of the dishonor of the order, the defendants are entitled to recover." The written order referred to is as follows:

"PORTLAND, OREGON, December 10, 1879.

$300.          On January 5, 1880, without grace, pay to the order of Hawley, Dodd & Co. three hundred dollars, value received, and charge the same to the account of

JETTE & CLARK.

To J. D. MILLER, Oregon City."

The facts stipulated show that this order was received by the plaintiffs on the 12th day of December, 1879, and by them presented to the said J. D. Miller for acceptance, and that the same was by him accepted on that day.

The argument of the counsel for the appellants, and the authorities cited in support of his view, show that he considered this order as a check, or at least, the law in relation to checks under the facts stipulated, as applicable to this order. Our first enquiry then must necessarily be, what is the nature or character of this order, and what is the law applicable to it under the facts admitted? The definition of a check is "a written order, or request, addressed to a bank, or to persons carrying on the business of bankers, by a party having money in their hands, requesting them to pay on presentment, to a person named therein, or to him or bearer, or order, a named sum of money." Mr. Justice Story in the *Matter of Brown*, 2 Story's Reports, 512, says: "I agree, that it (a check) nearly resembles a bill of exchange; but *nullum simile est idem.* The distinguishing characteristics of checks, as contradistinguished from bills of ex-

change, are that they are always drawn on a bank, or bankers; that they are payable immediately on presentment, without the allowance of any days of grace, and that they are never presentable for mere acceptance."

In *Ballard* v. *Randall*, 1 Gray, 606, Chief Justice Shaw says: "A check is an order to pay the holder a sum of money at the bank on presentment of the check and demand of the money, no previous notice is necessary, no acceptance is required or expected, it has no days of grace. It is payable on presentment and not before." The distinction between checks and inland bills of exchange has been very clearly and concisely stated by Mr. Justice Swayne in *Merchant's Bank* v. *State Bank*, 10 Wallace, 647, in which he says: "Bank checks are not inland bills of exchange, but have many of the properties of such commercial paper, and many of the rules of the law merchant are alike applicable to both. Each is for a specified sum payable in money. In both cases there is a drawer, a drawee and a payee. Without acceptance, no action can be maintained by the holder upon either, against the drawer. The chief points of difference are that a check is always drawn on a bank or banker; no days of grace are allowed. The drawer is not discharged by the laches of the holder in presentment for payment, unless he can show that he has sustained some injury by the default. It is not due until payment is demanded, and the statute of limitations runs only from that time. It is by its face the appropriation of so much money of the drawer in the hands of the drawee to the payment of an admitted liability of the drawer. It is not necessary that the drawer of a bill should have funds in the hands of the drawee. A check in such case would be a fraud." As a result of these authorities it may be stated that the particulars in which checks differ from ordinary bills of exchange,

are: First, They are always drawn on a bank or banker, and are payable on presentment, without any days of grace. Second, They require no acceptance as distinct from prompt payment. Third, They are always supposed to be drawn on a previous deposit of funds, etc. (Story on Prom. Notes, sec. 489; *Leslie* v. *Given,* 8 Bush, 359.)

Tested by these principles, the order in question is an inland bill of exchange, and not a check. Confessedly by the record, it is not drawn on a bank or banker, and in this respect differs from a check. Upon the face of the order appear the words "without grace," indicating that in the absence of these words the order would be entitled to grace, and was so understood, which, in a check, would be wholly unnecessary, because not entitled to grace. It was presented by appellants to the drawee and by him aacepted, which indicates that they regarded the order as a bill, with the incidents of the law merchant, and not as a check, for, as Judge Story said, supra, "checks are never presentable for mere acceptance. The ordinary form of a bill of exchange, payable at a future day, is at so many days or months notice after date or sight. When a bill is so drawn, or drawn like the order in question it will carry with it the privileges and liabilities incident to a bill, and by adopting such form it will be held so to intend."

Will the insolvency then of the drawee excuse the plaintiffs from presentment for payment according to the terms of the bill, and giving notice to the drawers of its non-payment or dishonor? In his recent work, Mr. Daniels says: "The bankruptcy and insolvency of the drawee of a bill, however well known, constitutes no excuse for neglect to make due presentment, or to give due notice of its dishonor to the drawer or endorser if it is not accepted. *And the same rule applies as to the necessity of presentment for*

*payment to the acceptor of a bill, or maker of a note, and as to notice of its dishonor by non-payment."* And again, that "the American and English authorities are uniform on the subject." (Daniels on Negotiable Instruments, secs. 1171 and 1172; Chitty on Bills, 354, 396; Story on Notes, secs. 286, 367; Story on Bills, secs. 318, 326, 346; 1 Parsons on Notes and Bills, 446, 528; Bigelow on Bills and Notes, 365, 378, sec. 6, and the authorities cited.)

The ground upon which this doctrine rests, is said to be that it is a part of the implied obligations of the contract to make due presentment, and give due notice of the dishonor of the bill, to fix the liability of the drawer, and *secondly*, that notwithstanding the failure, it cannot be definitely ascertained, without presentment for payment, that the bill will be dishonored, as through friends or resources unknown to others, the principal party may derive means for payment. (Daniels on Negot. Inst., sec. 1171; Story on Prom. Notes, sec. 286.) Want of injury to the drawer is never a sufficient excuse for default in making presentment for payment and giving notice of dishonor. (Daniels on Negot. Inst., sec. 1170; Chitty on Bills [13th Am. Ed.] 490; 1 Parsons on Notes and Bills, 551, 630.)

But it has been held that want of notice is excused when the party cannot possibly be damaged thereby. (*Smith* v. *Miller*, 52 N. Y., 545; *Taylor* v. *Manuf. Co.*, 82 Ill., 579.) But otherwise, if the omission to give the notice *might* prejudice him. In *Mauney* v. *Coit*, 80 N. C., 300, it is held that when a draft on a third person is given in settlement of an anticipated debt, it is the duty of the holder to present it and to give notice of its dishonor if not paid, and a failure to do so will discharge the debt. And as applicable to this same doctrine, Mr. Daniels says: "When a party contracts a debt and contemporaneously gives in additional

4

payment, his draft upon a third party, it is the duty of the creditor to present it in a reasonable time for acceptance or payment and *to give notice in the event of its dishonor to the drawer.* If he fails to make such presentment or to give such notice, the drawer is not only *discharged from liability* on the bill, but also from the debt or consideration for or on account of which it was given." (Daniel's Neg. Inst., sec. 1276, and authorities cited in the note.)

Laches which would discharge the drawer or indorser of a bill of exchange, will as effectually extinguish the debt for payment of which a bill, or other negotiable instrument is transferred. (*Smith* v. *Miller*, 43 N. Y., 175.) The result of these authorities is that the order in question is an inland bill of exchange, and as such, the duties, obligations and liabilities of the law merchant attach to it. Although not received in absolute payment of their debt by the appellants, but *sub modo*, yet it was their duty, if they intended to hold the defendants, either as drawers of the bill, or for their prior indebtedness, to present the bill for payment within the time prescribed by law for that purpose, and if not paid to notify the defendants of its dishonor. Had this been done the remedy of the plaintiffs against the defendant would have been very clear. They would have been remitted to all their rights for the recovery of their original claim as if no bill had been drawn. By receiving the bill they undertook to do all the law required to be done to obtain payment, and if they fail in the performance of that duty the debtor is discharged. It follows from these views that the judgment of the court below is affirmed.

Judgment affirmed.